IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| RICARDO MEDRANO, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 5:09-cv- 0570 |
| | ) |
| DAVID BERKEBILE, Warden, | ) |
| FCI Beckley, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## **ORDER**

      On May 18, 2009, Plaintiff, proceeding *pro se* and presently in confinement at FCI Beckley, filed a letter addressed to the Clerk of the Court in which he complains that he was assaulted by two inmates at FCI Beckley. Specifically, Plaintiff states as follows:

      The following incident transpired on April 19, 2009, in unit Pine-AL, time of day 3:00 p.m. to 4:00 p.m., the following inmates rushed into my cell/room: Linwood Gray, reg. number 00795-016; Richard Jefferson, reg. number 14921-080; and Kareem Watts, reg. number 04772-007. Mr. Linwood Gary came into my cell accusing me of being a rat and a f**cking snitch in front of another individual (Marc Hill) & that he should kill me, that I deserve to be killed & be thrown in a ditch & he put his hands up to my neck, all the time I tried to tell him and Marc that it wasn't true & that I would try to get my PSI & Mr. Linwood said for what, so I could alter it. That he knows the law & he knew all the tricks. That I was a f**ucken liar & he said he had the proof & he had Richard Jefferson summoned and Mr. Jefferson came in and told everyone in the room that I was a snitch. That he did my legal typing for me & that I did cooperate with the government and he gave a brief summary of what he typed for me in the past (5 months ago) and not to lie that I was a confidential informant & was a paid informant for the government & that my cover was up, just to admit it. I then tried to explain that it was someone else's legal stuff, not mine, & that is when Mr. Linwood Grey started up with me. All the while Kareem Watts was guarding the door to my room/cell & I couldn't leave my cell to leave & inform the correctional officer in the Unit that I didn't want to be in there anymore and Mr. Linwood just kept coming at me threatening and told me to wait till we came off lock down for count and not to go to the cops cause he wasn't finished with me. That he was going to inform everyone that I was a snitch, including telling the Mexicans. So they could take care of me like they should have a long time ago & Mr. Jefferson

>	waited till they walked out of my cell and told me that I should just go hide in a corner somewhere. . . These actions by the mentioned individuals put my life in danger with the Mexicans and other gang members in this compound & this will follow me to whatever facility I go to. So before I got hurt or sustained any physical injury, I requested to go to protective custody for my safety from these individuals and God only knows what would have happened if I would have remained in population.

Plaintiff therefore contends that FCI Beckley staff did not adequately provide for his safety, which resulted in Plaintiff's placement in "protective custody, special housing unit section, and being locked down 24 hours, 7 days a week for an untold period of time restricted of liberty of movement in this institution and if FCI at Beckley chooses not to address or do anything about this never ending problem, these abusive acts will continue."

As a general matter, punishments prohibited under the Eighth Amendment include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment.[1] See Farmer v. Brennan, 511

---

[1] Several Circuit Courts of Appeals have held that labeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees. *See Benefield v. McDowall*, 241 F.3d 1267 (10th Cir. 2001); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138-39 (9th Cir. 1989); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Gullate v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981). The Fourth Circuit has not gone as far, but noted the severity of the conduct in *Miller*

U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims therefore, that prison officials disregarded specific known risks to inmates' health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991) (Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir.

---

v. Leathers, 913 F.2d 1085, 1088 at fn. 1 (4th Cir.1990)("It is impossible to minimize the possible consequences to a prisoner of being labeled a 'snitch.'"), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991).

1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

Furthermore, due process is implicated when an inmate is designated to segregation for a prolonged and indefinite period of time. In Hewitt v. Helms, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983), the United States Supreme Court found that under State statutes and regulations, inmate Helms had "a protected liberty interest in remaining in the general prison population." Id., 459 U.S. at 470-71, 103 S.Ct. at 871. The Supreme Court noted that some process is required when an inmate is placed in administrative segregation for a prolonged or indefinite term stating that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate." The Court stated further as follows:

> Prison officials must engage in some sort of periodic review of the confinement of such inmates. This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision . . . will be based on facts relating to a particular prisoner – which will have been ascertained when determining to confine the inmate to administrative segregation – and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner. * * * [T]he ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations . . .

Id. In Sandin v. Connor, the Supreme Court withdrew from the methodology prescribed by Hewitt and shifted the focus of the liberty interest inquiry from the language of a particular regulation to the nature of the deprivation.[2] Sandin, 515 U.S. at 483-84, 115 S.Ct. at 2300. The Supreme Court stated in Sandin that in order to show the deprivation of a liberty interest protected by the Due

---

[2] The Supreme Court clearly indicated in *Sandin* that it was not overruling *Hewitt*. *Sandin*, 515 U.S. at 483 n. 5, 115 S.Ct. at 2300 n. 5.

Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Id.

Based on the foregoing, the undersigned considers Plaintiff's letter as an attempt to initiate a civil action under Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and hereby directs the Clerk to open a new civil action and include therein a copy of Plaintiff's letter. The undersigned further **ORDERS** that the Clerk send Plaintiff a copy of a form Complaint and Application to Proceed *in forma pauperis* and that within 30 days of the date of entry of this Order (1) Plaintiff file, if he wishes, the form Complaint specifying, among other things, the Defendant(s) in his Bivens action and stating his claims, and (2) Plaintiff either pay the $350.00 filing fee or file the Application to Proceed *in Forma Pauperis* and other documents as required by 28 U.S.C. § 1915(a)(1) and (2).[3] Failure of the Plaintiff to file a form Complaint and complete Application to Proceed *in forma pauperis* or Without Prepayment of Fees within thirty (30) days from the date of this Order will result in a recommendation of dismissal of this matter without prejudice Pursuant to Rule 41(b) of the Federal

---

[3] U.S.C. § 1915 provides as follows:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

Rules of Civil Procedure [4] and Rule 41.1 of the Local Rules of Civil Procedure for the Southern District of West Virginia[5].

ENTER: May 20, 2009.

R. Clarke VanDervort
United States Magistrate Judge

---

[4] Rule 41(b) of the Federal Rules of Civil Procedure provides:

**(b) Involuntary Dismissal: Effect Thereof**. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

[5] Rule 41.1 of the Local Rules provides:

**Dismissal of Actions**. When it appears in any pending civil action that the principal issues have been adjudicated or have become moot, or that the parties have shown no interest in further prosecution, the judicial officer may give notice to all counsel and unrepresented parties that the action will be dismissed 30 days after the date of the notice unless good cause for its retention on the docket is shown. In the absence of good cause shown within that period of time, the judicial officer may dismiss the action. The clerk shall mail a certified copy of any order of dismissal to all counsel and unrepresented parties. This rule does not modify or affect provisions for dismissal of actions under FR Civ P 41 or any other authority.